CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
June 30, 2025
LAURA A. AUSTIN, CLERK
BY: s/A. Beeson
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| PAULO VICENTE DIEFFENBACHER,  )  | Case No. 7:24-cv-00057 | |
|     Plaintiff,                                      ) | | |
|                                                         ) | | |
| v.                                                           ) | Hon. Robert S. Ballou | |
|                                                         ) | United States District Judge | |
| ERIC YOUNG, et al.,                              ) | | |
|     Defendants.                              ) | | |

## MEMORANDUM OPINION

Paulo Vicente Dieffenbacher, a Virginia inmate proceeding *pro se*, filed this civil action under 42 U.S.C. § 1983 against six correctional officials at the Middle River Regional Jail in Staunton, Virginia. Dieffenbacher claims that two of the defendants, Robyn Marshall and David Bauguess, violated his federal constitutional rights by hindering his efforts to send a trial transcript to an attorney. He also claims that Marshall violated his rights by refusing to allow him to include handwritten notes in legal correspondence addressed to his attorney and by not permitting him to seal the correspondence himself.

The defendants have moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. Dkt. 15. For the reasons set forth below, I will grant the motion to dismiss.

## I. Background

The following summary of the facts is taken from the complaint and attached documents.[1] The facts are presented in the light most favorable to Dieffenbacher. *See Washington v. Hous. Auth. of the City of Columbia*, 58 F.4th 170, 177 (4th Cir. 2023) (noting that

---

[1] The attached documents include letters drafted by Dieffenbacher, an attorney, and a judge. Dieffenbacher indicates that he included the letters as "additional supporting facts" and that they are "designed to be supporting documents" for his claims against Marshall and Bauguess. Compl. Attach. 3 at 1, Dkt. 1-3.

a court reviewing a motion to dismiss must "accept all factual allegations as true and draw all reasonable inferences in favor of the plaintiff").

In late 2022 and early 2023, Dieffenbacher was confined at the Middle River Regional Jail while awaiting sentencing in Augusta County Circuit Court. Compl. 2, Dkt. 1; Compl. Attach. 1 at 1, Dkt. 1-1. The public defender's office had withdrawn from his criminal case "due to an undisclosed conflict of interest," and his court-appointed attorney had "released himself on his own volition." Compl. Attach. 1 at 14–15. Dieffenbacher had paid David Hargett, an attorney in Glen Allen, Virginia, to investigate potential claims to raise on appeal, and he hoped to also retain Hargett to represent him at the sentencing hearing. *Id.* at 1, 23. Hargett asked Dieffenbacher to send him the trial transcript as soon as possible and informed him that a separate fee would be required for representation at sentencing. *Id.* at 12.

The trial transcript was over 200 pages long, and Dieffenbacher possessed a copy of the transcript at the jail that cost him $1,200 to obtain. *Id.* at 2, 18. In November 2022, Dieffenbacher sent a series of electronic messages to the mailroom inquiring about the process of copying the transcript and mailing it to his attorney. *Id.* Bauguess responded to several messages and informed Dieffenbacher that he would need to divide the transcript pages into separate envelopes that did not weigh more than ten ounces each. *Id.* at 2–3; *see also* Compl. 2 (identifying Bauguess as Author 687 for purposes of the electronic messaging system). On December 13, 2022, Dieffenbacher sent Marshall a message challenging the validity of the information provided by Bauguess. *See* Compl. Attach. 1 at 9 (asserting that "putting a $1,200 legal file in 10 or multiple white envelopes is an unreasonable suggestion"); *see also* Compl. 2 (identifying Marshall as Author 661 for purposes of the electronic messaging system). In response, Marshall informed Dieffenbacher that the mailroom could not send out 200 pages in a single mailing and

asked if his attorney could obtain the transcript from the court. Compl. Attach. 1-1 at 10. Dieffenbacher replied on December 19, 2022, that it was "not possible for [the] lawyer to go to the courts to get a copy" and asked to speak to Marshall in person. *Id.* Dieffenbacher reported that he was his "own lawyer representing [himself] for the sentencing phase" and that his "appellant lawyer . . . out of Richmond" had requested the transcript. *Id.*

Dieffenbacher subsequently showed Marshall the transcript and the receipt showing that he paid $1,200 to obtain it. *Id.* at 11. Marshall told him that she would return on December 21, 2022, to make a copy of the transcript and have it ready to be picked up by Dieffenbacher's "power of attorney and friend, Josiah Driver." *Id.* Dieffenbacher then arranged for Driver to pick up the transcript from the jail and let Hargett know that Driver would be sending him the transcript. *Id.*

On the morning of December 21, 2022, defendant Powell Bostic entered Dieffenbacher's pod to deliver mail. *Id.* at 12. Dieffenbacher asked Bostic to remind Marshall that she had agreed to make a copy of the trial transcript, and Bostic told him that Marshall was planning to come see him. *Id.* After discovering that Marshall had sent him a message that he could not respond to, Dieffenbacher approached defendant Paul Thompson, a floor officer, and asked if Thompson would speak to Marshall on his behalf. *Id.* When Thompson returned to the pod on his next round, he informed Dieffenbacher that Marshall was not in her office. *Id.* Another officer eventually spoke to Marshall that afternoon, and Marshall promised to stop by to see Dieffenbacher. *Id.* at 13. However, Marshall was a "no show" that day. *Id.*

At approximately 8:30 a.m. the next morning, after being called by another floor officer, Marshall went to Dieffenbacher's pod to speak to him. *Id.* At that point, Marshall informed Dieffenbacher that she was not allowed to make a copy of the transcript. *Id.* at 12–13. Marshall

3

also would not permit Dieffenbacher to include 30 pages of handwritten transcript notes in legal mail addressed to his attorney, and she refused to allow him to seal the legal mail himself "because she said she had to go through it." *Id.* at 13.

By letter dated December 27, 2022, Dieffenbacher informed the Augusta County Circuit Court Clerk's Office that he was "finally able to mail out" his trial transcript to his "appellate attorney, David Hargett," on December 22, 2022, and that the attorney would need time to review it in order to represent him at the sentencing hearing. *Id.* at 8; *see also* Pl.'s Resp. Mot. Dismiss 2, Dkt. 19 (noting that the "back and forth correspondence" regarding the mailing of the transcript "did not get *resolved* until December 22, 2022") (emphasis added). Dieffenbacher reported that he did not feel comfortable proceeding without counsel and requested a continuance of the sentencing hearing scheduled for January 27, 2023. *Id.* at 15.

On January 5, 2023, Augusta County Circuit Court Judge W. Chapman Goodwin notified Dieffenbacher that his sentencing hearing had been continued until March 17, 2023, and that Michael Hallahan had been appointed to represent him in connection with that proceeding. *Id.* at 25. The judge directed Dieffenbacher to let Hallahan know immediately if he intended to retain his own attorney. *Id.*

According to publicly available information, Dieffenbacher proceeded to sentencing on March 17, 2023, and Hallahan represented him at the sentencing hearing. *See Commonwealth v. Dieffenbacher*, Nos. CR21000403-01, CR22000071-00 (Augusta Cnty. Cir. Ct.), available at https://eapps.courts.state.va.us/ocis/search (last accessed May 15, 2025).

In January 2024, Dieffenbacher filed this civil action under 42 U.S.C. § 1983. He claims that Marshall and Bauguess violated his federal constitutional rights by hindering his efforts to send the trial transcript to Hargett. He also claims that Marshall violated his "right to attorney-

4

client privilege," the Fifth Amendment, and the First Amendment by refusing to allow him to seal legal correspondence addressed to Hargett and by not permitting him to include 30 pages of handwritten transcript notes for the attorney to review. Compl. 2; Compl. Attach. 1 at 15. In addition to Marshall and Bauguess, the complaint names as defendants Powell Bostic, Paul Thompson, Eric Young, and Lori Nicholson. Compl. 1.

## II. Standard of Review

A Rule 12(b)(6) motion to dismiss "tests the sufficiency of a complaint." *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016). To survive dismissal, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint that offers bare labels and conclusions will not suffice. *Id.* Although a complaint filed by a *pro se* litigant must be construed liberally, it "still must contain enough facts to state a claim for relief that is plausible on its face." *Thomas v. Salvation Army S. Terr.*, 841 F.3d 632, 637 (4th Cir. 2016) (internal quotation marks omitted).

## III. Analysis

Section 1983 imposes liability on any person who, under color of state law, deprives another person "of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Additionally, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a

plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Having reviewed the complaint, I conclude that it fails to state a plausible claim for relief under § 1983 against any of the named defendants.

A.   **Right to Counsel**

First, the complaint does not contain sufficient facts to state a violation of the Sixth Amendment right to counsel.[2] The Sixth Amendment states, in part, that in "all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. "It has long been recognized that the right to counsel is the right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). "[A] critical component of the Sixth Amendment's guarantee of effective assistance is the ability of counsel to maintain uninhibited communication with his client and to build a relationship characterized by trust and confidence." *United State v. Chavez*, 902 F.2d 259, 265 (4th Cir. 1990). Courts have recognized that "[i]nspecting an inmate's legal mail may implicate the Sixth Amendment right to communicate freely with his attorney in a criminal case." *Altizer v. Deeds*, 191 F.3d 540, 549 n.14 (4th Cir. 1999) (citing *Wolff v. McDonnell*, 418 U.S. 539, 575 (1974)). However, "[n]ot all government interference with the attorney-client relationship" gives rise to a Sixth Amendment violation. *Chavez*, 902 F.2d at 265. "Rather, it is well settled that some showing of prejudice is a necessary element of a Sixth Amendment claim based on an invasion of the attorney-client relationship." *Id.*; *see also United States v. Allen*, 491 F.3d 178, 192 (4th Cir. 2007) ("Because Appellants do not allege any prejudice . . . , nor is any prejudice clear from the record, there was no Sixth Amendment violation."); *United States v. Hohn*, 123

---

[2] I liberally construe Dieffenbacher's reference to his "right to attorney-client privilege" as an attempt to invoke the Sixth Amendment.

6

F.4th 1084, 1112 (10th Cir. 2024) ("A majority of the circuit courts support [the] view that Sixth Amendment claims concerning purposeful, unjustified intrusions into the attorney-client relationship require the defendant to show prejudice . . . .") (collecting cases, including *Allen*).

Here, Dieffenbacher alleges that Marshall violated his "right to attorney-client privilege" by refusing to allow him to seal correspondence addressed to Hargett, thereby "leaving it open to be read by any staff member who handled it, including her." Compl. Attach. 3 at 1. Dieffenbacher also alleges that Marshall would not allow him to include his "thirty-plus page handwritten transcript notes" in the correspondence addressed to Hargett, and that Marshall and Bauguess hindered his efforts to send Hargett a copy of the transcript. *Id.* He acknowledges, however, that he was eventually "able to mail out" the complete trial transcript, Compl. Attach. 1 at 8, and he has not plausibly alleged that he suffered any prejudice as a result of the defendants' actions or Hargett's delayed receipt of the transcript. The state court granted Dieffenbacher's request to continue his sentencing hearing based on the transcript issues, and it appointed a new attorney to represent him in the event that Hargett was not retained for the sentencing proceeding. There are no factual allegations from which I could reasonably infer that the defendants' actions adversely impacted Dieffenbacher's ability to consult with counsel regarding the sentencing or appellate proceedings, or the result of those proceedings. Thus, the complaint fails to state a claim for violation of his Sixth Amendment right to counsel.

**B.     Right to Access the Courts**

For similar reasons, the complaint fails to state a constitutional claim for denial of access to the courts. State inmates "have a constitutionally protected right of access to the courts that is rooted in the Petition Clause of the First Amendment and the Due Process Clause of the

Fourteenth Amendment."[3] *DeMarco v. Davis*, 914 F.3d 383, 387 (5th Cir. 2019) (internal quotation marks and citation omitted); *see also Pink v. Lester*, 52 F.3d 73, 76 (4th Cir. 1995). "While access to law libraries is the most frequently discussed element of access to the courts, part of meaningful access is furnishing basic scribe materials for the preparation of legal papers," including "paper, some means of writing, [and] mailing materials." *Gentry v. Duckworth*, 65 F.3d 555, 558 (7th Cir. 1995) (citing *Bounds v. Smith*, 430 U.S. 817, 824 (1977)). However, inmates "are not entitled to limitless supplies of such materials, merely to that amount minimally necessary to give them meaningful access to the courts." *Id.* Because "meaningful access to the courts is the touchstone," an inmate must plead facts showing that he suffered an "actual injury" as a result of the denial of access. *Lewis v. Casey*, 518 U.S. 343, 351 (1996) (internal quotation marks omitted). To satisfy the injury requirement, a plaintiff "must identify a 'nonfrivolous,' 'arguable' underlying claim" that was frustrated or impeded as a result of a defendant's actions. *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (quoting *Lewis*, 518 U.S. 343, 353 & n.3 (1996)).

Dieffenbacher has not alleged facts sufficient to satisfy the injury requirement. Although he claims that Marshall and Bauguess hindered his efforts to send the trial transcript and transcript notes to Hargett, "[m]ere delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation." *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003). Because the complaint does not identify any nonfrivolous claim or defense that was frustrated or impeded as a result of the defendants' actions, it fails to state a claim for denial of access to the courts. *See Harbury*, 536 U.S. at 415

---

[3] To the extent Dieffenbacher relies on the Fifth Amendment, he fails to state a claim upon which relief may be granted. The Due Process Clause of the Fifth Amendment applies only to the federal government or federal actors, and not to state or local government employees. *See Dusenberry v. United States*, 534 U.S. 161, 167 (2002).

(emphasizing that the underlying claim is "an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation"); *Monroe v. Beard*, 536 F.3d 198, 206 (3d Cir. 2008) (holding that the plaintiffs' allegations were insufficient to state a claim under *Harbury* where they "alleged that they lost the opportunity to pursue attacks of their convictions . . . but did not specify facts demonstrating that the claims were nonfrivolous").

C.   **Right to Free Speech**

Dieffenbacher also contends that Marshall violated his First Amendment right to free speech by refusing to allow him to seal legal correspondence addressed to Hargett on the basis that "she had to go through it." Compl. Attach. 1 at 14; *see also id.* at 15 ("It was out of my control that Lt. Marshall interfered [with] and violated my First Amendment rights when she prevented me from keeping my sensitive legal mail confidential."). Dieffenbacher alleges that a jail policy only allows staff to inspect an inmate's outgoing legal mail in the presence of the inmate. Compl. Attach. 3 at 1.

"The First Amendment, as incorporated through the Fourteenth Amendment, prohibits States from 'abridging the freedom of speech.'" *Haze v. Harrison*, 961 F.3d 654, 658 (4th Cir. 2020) (quoting U.S. Const. amend. I). This proscription extends to restrictions that directly burden speech, as well as government actions that have indirect chilling effects. *Id.* The Fourth Circuit has recognized that opening an inmate's legal mail outside his presence "can chill protected speech." *Id.* However, isolated incidents of legal mail being opened outside an inmate's presence do not rise to the level of a constitutional violation. *See Buie v. Jones*, 717 F.2d 925, 926 (4th Cir. 1983) (holding that "a few isolated instances of plaintiff's mail being opened outside of his presence" in violation of a jail policy "were not of constitutional magnitude"); *see*

9

*also Gibson v. Erickson*, 830 F. App'x 372, 373 (3d Cir. 2020) (explaining that "while a pattern or practice of opening legal mail outside the presence of an inmate is sufficient to state a First Amendment violation, a single instance is usually not enough") (internal quotation marks and citations omitted); *Davis*, 320 F.3d at 351 (noting that "an isolated incident of mail tampering is usually insufficient to establish a constitutional violation" and that inmates "must show that prison officials regularly and unjustifiably interfered with [their] legal mail") (internal quotation marks omitted). Likewise, "merely alleging an isolated delay or some other relatively short-term, non[-] content-based disruption in the delivery" of an inmate's mail will not support a First Amendment claim. *Sizemore v. Williford*, 829 F.2d 608, 610 (7th Cir. 1987).

Dieffenbacher's complaint describes a single incident in which Marshall refused to allow him to seal legal correspondence because she needed to inspect it before it was mailed. He does not allege that Marshall engaged in a "deliberate pattern or practice" of tampering with his legal mail or inspecting it outside his presence. *Haze*, 961 F.3d at 659 (holding that a reasonable jury could find that the defendants engaged in a deliberate pattern or practice where the plaintiff identified "fifteen instances of interference with his legal mail," seven of which involved mail being opened, copied, and forwarded to the District Attorney's office). Consequently, the complaint fails to state a violation of Dieffenbacher's First Amendment right to free speech.

**D.     Personal Involvement**

The defendants correctly note that the complaint does not allege any wrongdoing by any of the defendants other than Marshall and Bauguess. In a civil rights action under 42 U.S.C. § 1983, each government official "is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677. "Liability is thus determined person by person: A plaintiff must show 'each Government-official defendant, through the official's own individual actions, has violated the Constitution.'"

*King v. Riley*, 76 F.4th 259, 269 (4th Cir. 2023). "Importantly, mere knowledge of such a deprivation does not suffice." *Williamson v. Stirling*, 912 F.3d 154, 171 (4th Cir. 2018). Because there is no indication that defendants Bostic, Thompson, Young, and Nicholson were personally involved in any alleged violation of Dieffenbacher's constitutional rights, the claims against them must be dismissed.

### IV. Conclusion

For the reasons stated, Dieffenbacher's complaint, liberally construed, fails to state a claim upon which relief may be granted.[4] Therefore, I will grant the defendants' motion to dismiss under Rule 12(b)(6) and dismiss the complaint without prejudice. Because Dieffenbacher is proceeding *pro se*, I will grant him leave to file an amended complaint within 30 days. An appropriate order accompanies this opinion.

Enter: June 30, 2025

/s/ Robert S. Ballou

Robert S. Ballou
United States District Judge

---

[4] Given this conclusion, I find it unnecessary to address the defense of qualified immunity raised by the defendants.